I hope you all didn't have too much difficulty getting here this morning. I'm advised by the clerk that all individuals presenting argument this morning are here, so we'll proceed with outcalling the day calendar. Our first case for argument is United States v. Hampton, 1736-80. Counsel? Thank you. May it please the court, my name is Tina Schneider. I represent Russell Hampton. We're here before this court for the second time on direct appeal of my client's 2011 convictions for drug conspiracy, racketeering conspiracy, and a 924C firearms offense arising out of the racketeering conspiracy. In March of 2017, this court issued a summary order remanding my client's case for resentencing, affirming the convictions, and holding in part that RICO conspiracy is a crime of violence under subsection A, that is, the force or elements clause. We're here today asking this court to revisit and correct that earlier and erroneous ruling. Why isn't that law of the case right or wrong law? We already decided it. Yes, but the case is, as long as the case is still alive before this court, you have the ability, the authority to change your ruling. But we don't, it's been ruled that we don't have to do it. This is not incumbent upon us. Well, I would say it was, because the earlier ruling was incorrect. We get them wrong all the time in the sense that, you know, later on somebody comes along and says, the Supreme Court comes along and says, you've been doing it wrong all this time. The question is whether this issue in this case is gone or not. Yes, and this is what I would say to that, is that this court got it right for 30 years, ruling in every single case that conspiracy fell within the risk of force clause, that is, subsection B. And in Barrett, which was decided since this case, this court was very clear that conspiracy falls within the risk of force clause. This case is a categorically. Categorically. Categorically. Categorically, although in Barrett the court also looked. That's why we don't have a DeMaia concern here. At least Barrett didn't think so. And we are reserving that issue. I understand that this Court has made its decision on that, and we're reserving our arguments about that. But for today's purposes. I gather there may be a rising division of the circuits on that.  And the Supreme Court has accepted a case, Davis, in which they'll decide whether or not subsection B of this definition is void for vagueness. And if this Court does not correct its earlier wrong ruling on this issue, and the Supreme Court invalidates subsection B, my client will be serving 5 years for a crime that is not a crime. After Barrett, aren't we, you know, Barrett kind of leads the way on, that was Hobbs Act conspiracy, an analysis that's kind of two-pronged of C-3B, the risk of force clause. I'm not sure why we don't reach the same conclusion here as to your client, given that the object of the RICO conspiracy was attempted murder and murder. Well, that's what we're here asking the Court to do. We're asking the Court to find that my client's RICO conspiracy falls under subsection B, the risk of force clause, instead of subsection A, the elements clause. But I'm asking, don't we reach the same result that it was a crime of violence, his RICO conspiracy that focused on attempted murder and murder, using the Barrett analysis? Yes, you do. But there are three reasons why it's important for you to reach this issue. The first is, as I mentioned, if the Supreme Court invalidates that second clause and you don't correct this error, Mr. Hampton's serving time for something that's not really a crime. The second reason is, the law is always changing, and so we don't know the implications of this in the future if this wrong decision remains on the books, how that might affect Mr. Hampton. But thirdly, and I think very importantly, is that what this Court decides is important, whether or not it has immediate impact. I'd just like you to drill down a little bit more and explain what immediate effect it has for your client were we to correct or alter the reference from C-3A to C-3B. The immediate effect would be if the Supreme Court invalidated that clause founded for vagueness, then his conviction would then, for that firearms offense, would then be vacated. So law of the case gives you the ability where the earlier ruling is clearly erroneous to change your minds and correct that ruling. The ability, but not necessarily the requirement. You're saying that under these circumstances, you should do it. I am saying you should. I'm saying you should do it. And law of the case is just a doctrine that says, well, we won't mess with prior decisions in the same case unless we should. And here you should because it's wrong. But if we get there, I want to be sure I understood something you said a moment ago. If we do that and revisit it, you're not making any argument that Barrett would not apply here. You question Barrett, but you don't question Barrett's application here? Yes, exactly. That's right. That's right. And we are raising an issue in this case that that subsection is unconstitutional. So since we were before this Court in March, one possible disposition, then, is to recast the decision if we were to get past the law of the case argument, recast the decision as relying on risk of force clause and then await the Supreme Court's decision on review of Barrett. Yes, Your Honor. Is that right? That's right. We have another issue that has arisen very recently about the First Step Act. I sent in a Rule 20HA letter to the Court, but I'd just like to complete this argument right now. So since we were before the Court in March of 2017, DMIA came out from the Supreme Court, which had language that showed that they considered conspiracy as the poster child for the risk of force clause. Number two is Barrett. This Court came out with a Barrett decision, which is clear. And the third thing is that the Solicitor General's Office indicated in its response to our petition for cert that this Court may have wrongly decided the issue, may have wrongly cast Mr. Hampton's RICO conspiracy under subsection A rather than subsection B. So even the government, I understand not this office, but the Solicitor General's Office, believes that issue was wrongly decided in this case. So under law of the case doctrine, we would ask that you reconsider that and correct that error. I don't want to be obtuse in my question to you about whether you agree that there's no difference here with racketeering. Why I asked you that specifically is that to prove a RICO conspiracy, the government has to prove, as I understand the precedent, that the co-conspirators agreed to conduct the affairs of the enterprise through a pattern of racketeering, but that no particular predicate has to be proved. And I just want to be clear that you don't think that makes any difference from the person found guilty of an actual conspiracy to commit a violent crime as in Barrett. Now, just to give you all parts of my puzzle so that you don't feel that you didn't have a chance to consider all of them, of course, in your case, your client was found to have committed two violent, or more violent predicates. And so I'm trying to figure out whether there are more steps in this case than in Barrett. I would argue that there are even fewer steps in this case than in Barrett. Okay, help me out. Okay, so first off, my client was not found to have committed any racketeering acts. He was found to have committed racketeering conspiracy. Well, that was a racketeering act. Well, the conspiracies were attempted murder and one conspiracy to cause depraved indifference. All conspiracies, not the actual substantive crime. Right, right. But if that were, if the predicate crime were the only crime, Barrett would control that. Because Barrett basically has. Yes. Okay, so, but now my question is to you, for a RICO conspiracy, you wouldn't have had to prove that predicate. You'd have only had to prove the agreement. And so I'm asking whether that makes a difference and whether the fact that he was found guilty of predicates that under Barrett would be deemed violent crimes makes this irrelevant because as in Barrett, we would have a jury finding that he involved himself in violent crimes. Two things, Your Honor. If my client had been convicted of the conspiracy to commit second degree murder or the conspiracy to commit attempted murder, those crimes, under Barrett, those would still fall within the risk of force clause and not the force clause. Secondly. No, no, I understand that. Yes, okay. And that's not what I'm asking you. Okay, so secondly I would say Barrett was a Hobbs Act conspiracy. This is a RICO conspiracy. RICO conspiracy, you don't even need to show an overt act. So if anything, a RICO conspiracy is more clearly not in the elements. So that's not your client's case here. I mean, what one might very well say is that in a RICO conspiracy, it depends on whether the defendant is found guilty of violent predicates and your client was. I would respectfully disagree with that because in a RICO conspiracy, just like any other conspiracy, the elements of the crime do not include force, threat of force, or attempted force. In a conspiracy, it's all about the agreement. Nothing has to happen. It's not an element of the crime. And so under Barrett, it would fall within subsection B. So Barrett tells us if the underlying, the object of the conspiracy is categorically a violent crime under A, because it has those elements, under Barrett, the conspiracy to commit that is a violent crime under subsection B. Well, except that the agreement here is pleaded in the indictment as an agreement to engage in narcotics trafficking and violence. And multiple acts of violence. That's the nature of the racketeering enterprise here. What the jury was asked to find and what they did find was whether he committed conspiracy, racketeering conspiracy, whether he was guilty of that. And they were asked to find what the predicate acts were. And all the predicate acts were conspiracies. They were not the substantive acts. Thank you. Thank you. Can I ask one hopelessly elementary question? I keep stumbling when you talk about, when anybody talks about conspiracy to commit attempted murder. That had me scratching my head. I mean, either you're conspiring to murder. Yes, let's attempt it but not succeed. That's not an attempt, right? I know. All right. I don't know. So it's not just me. Ms. Schneider, you have two minutes for rebuttal. We'll hear from Ms. Lee. May I please the Court? Good morning. My name is Tiffany Lee and I represent the United States. Your Honors, in looking at the underlying case that was decided earlier, the one line which triggers the question whether or not there is error in the Court's decision, it had stated that it was addressing the issue as 924C3BA. However, in the analysis, to the extent that if you're reading the body of the analysis, it really does refer in essence to the 924C3B analysis. It cites Elder. It describes the fact that, well, you know, if the object of the conspiracy is a crime of violence, then therefore it becomes, that conspiracy becomes a crime of violence for purposes of 924C3 generally. So the question before this Court is whether or not that summary order contains clear error requiring it to take another look at its earlier decision and to, in essence, affirm from what I'm gathering, I don't believe Ms. Schneider is asking for reversal of the conviction, which is basically she's saying have the affirmance, but have it on the 924C3B prong. And is really that the type of error that requires this Court to go back and change everything for that purpose? But this is a changing area of the law that's been developing, and it's highly technical. And in particular in the context of RICO conspiracy, wouldn't you agree that the layers of analysis are yet one more step removed or in a larger, I guess, more numerous than they were in Barrett, which really its ruling was based on Hobbs Act robbery? So don't we have some additional questions to answer here, such as the kind that Judge Radshee was posing? But is this the case to answer those questions? I mean, basically we had a trial here, and those issues with respect to the facts proven as with respect to Mr. Hampton's conduct was established and found proven by a jury. It was found proven that he was involved with a conspiracy to commit murder, the murder, the depraved indifference murder of Carmela Rogers. He was also found to be, it was proven based on the facts of the trial, that he was involved with the conspiracy to commit the attempted murders of the other victims. So in this case, when we're applying what we have right now as the law, specifically Barrett, and going through the analysis, at the end what we have is, even though I'm going to the step two part, even though the issue may not have been squarely before the jury, whether or not this RICO conspiracy predicate is a crime of violence, the jury that sat through the trial of this case heard plenty of evidence where it found those RICO predicate violent acts having been involved. But Ms. Schneider's argument, if I understood it, is that unless we review this and make clear that we are relying on Part B and Barrett, that unless we do that, if the Supreme Court were to reject Barrett's reasoning and not find conspiracies to commit violent crimes categorically risky crimes, her client can't get any relief here. So what is the government's response to that? I would think that the 2255 process would provide an avenue of relief. If there is a change in law, and depending on how the Supreme Court decides to apply that law, whether retroactively or not, I was in the middle of a lot of the post-Johnson litigation, so I feel like we would be put in that position again, just in terms of addressing a 2255 argument with respect to that. Are you prepared to concede that this is a violent crime under B rather than under A, given what the initial panel found? I think right now, as of the state of the law, based on Barrett, it is a violent crime based on A and B, based on reading, you know, that reading of them together. Is that so clear? I mean, Barrett involved the crime, the conspiracy for which the defendant was convicted. Here we're dealing with a predicate that you didn't even have to prove to find the defendant guilty. I mean, a RICO conspiracy only requires you to prove that the defendants agreed to conduct the enterprise through a pattern of racketeering. It doesn't require you to prove any predicate, does it? I agree it does not, but the whole substantive nature of RICO conspiracy is an enterprise of racketeering activities, an enterprise where people are engaged in violence and intimidation. If the defendant hadn't been found guilty of violent predicates, if he'd been found guilty only of narcotics predicates, other co-conspirators were found guilty of the conspiracy to commit murder and that, would you take the position that under Barrett, that this particular defendant is guilty of a violent crime? I don't know. To be frank, I would not know how I would analyze the situation. But certainly here, you know, I would say that I have not had the opportunity to engage in the level of analysis with respect to how RICO conspiracy as a crime fits within the new evolving definition of crime of violence, because that's not what the original position was in the papers. I mean, initially, the argument trajectory on behalf of Mr. Hampton was that Scott was wrongly decided because it relied on A. To the extent it relies on B, then DENMAIA renders it unconstitutional and therefore this court should reverse the conviction. I, you know, since then, we're somewhat shifting to this point. But, you know, I think it would require additional briefing if we're going to discuss the analytics of what's being addressed now in terms of that, the thoughts of is RICO conspiracy distinct from a Hobbs Act conspiracy, because the agreement relies on merely the, you know, the offense relies merely on the agreement. If you were to grant review of this question, not rely on the precedent, you want opportunity for further briefing, you didn't fully brief it in the papers to this court? I would say that not on the focus of what, you know, where racketeering conspiracy falls. I mean, at the time that I was responding, Barrett had just come out. So it basically did provide us with, you know, a better roadmap in terms of looking back on this. But that's where all the complexities lie with respect to this case, because the original decision in Scott was a summary order. We have the one line where, you know, the order says that it's disposed of, that it wasn't going to address the 924C3B issue, and then everything else was just simply, you know, relating to the law that expressly discusses 924C3B. But under these circumstances, if, you know, if this court requires us to further brief, if we would like to have the opportunity to reevaluate, take a deeper dive, I would say, with respect to whether there is a distinction between Riegel conspiracy and Hobbs Act conspiracy. At this point, I'm going to say no, but I haven't had a chance to really look deeply into the issue. I'm going to ask Ms. Schneider when she rebuts, I'm going to ask you now too, if we don't review this question, if we don't reconsider, does the government dispute that if the defendant were to petition for cert, he could argue that it was wrongly treated as a violent crime under A, and it cannot be a violent crime under B, because they do not think Barrett can be squared with DiMaia? Do you dispute that they could seek review on that argument? I don't dispute. I mean, you know, in the government cert petition, we realized, you know, the Solicitor General's office realized that there was a disconnect between the citation to Elder and 924C3A. So I think they may still oppose the cert on other grounds, but certainly it would recognize that now at least it's been addressed here before you all. Okay. Unless the Court has any further questions. And I also want to apologize. There is an error in my brief in the conclusion section. I asked for affirmance of the decision in order. Certainly now I was asking for affirmance of the judgment and conviction, but now based on our argument, it could be affirmance of your prior decision in order. But thank you very much for your time. Thank you very much. Ms. Schneider, you have two minutes rebuttal. Thank you. First, this Court in Doe previously considered RICO conspiracy. It was in the context of the Juvenile Delinquency Act, but it was the same provision. And in Doe, this Court found that RICO conspiracy fell within the risk of force clause. Secondly, RICO conspiracy does not have as an element force, threat of force, or attempted force. So it cannot fall within subsection A. Thirdly, you have to prove the enterprise as an element of RICO. So whatever the enterprise is, is an element of the crime. And here the enterprise is defined as one aimed at narcotics and acts of violence. So if you prove that enterprise, why haven't you proved, why haven't you kind of cleared that hurdle? I understand other enterprises might not have any violent component, but this one I'm not sure doesn't solve your problem. So I think it does, because the jury's instructed the elements of RICO conspiracy are that the defendant knowingly joined an enterprise where someone, where the agreement was someone would. And the object of the enterprise. Where someone would commit two racketeering acts. Well, he has to have joined that enterprise. Yes. I mean, there's enterprise, then there's his joinder in it. Yes. But we're looking at the elements and that the enterprise has certain objects is not, that the enterprise is violent is not before the jury. It may well be a violent enterprise, but all they have to find is he knowingly joined, made the agreement to join the enterprise. And the judge here instructed the jury over and over the agreement that that's the gist of it is the agreement. Thirdly, it's not just one line in this court's earlier decision. This court found in its earlier decision that it didn't even have to reach our arguments about the constitutionality of subsection B because this court was finding he fell within A. I think we have the argument. Okay. All right. Thank you very much. Well argued. We'll reserve decision.